## Tax Review Board *v.* Esso Standard Division, Appellant.

Argued November 30, 1966. Before BELL, C.J., MUSMANNO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Park B. Dilks, Jr.,* with him *Morgan, Lewis & Bockius,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *Richard B. Pearl,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for tax review board, appellee.

OPINION BY MR. JUSTICE EAGEN, March 14, 1967:

Section 4081 of the United States Internal Revenue Code of 1954 (26 U.S.C. §4081) provides: "(a) There is hereby imposed on gasoline sold by the producer or importer thereof, or by any producer of gasoline, a

tax of 4 cents a gallon."[1] Liability for payment of the tax is imposed upon the producer who makes the sale.[2]

The appellant, Esso Standard Division of Humble Oil and Refining Company (Humble) is the producer of gasoline and other petroleum products. Humble adds the amount of the above tax to the sales price of the gasoline it charges each purchaser, and the latter receives at the time of the sale an invoice separately listing thereon the charge for the product and the tax.

The question posed by this appeal is, whether that portion of the total sales price (on sales in Philadelphia), which Humble charges the purchaser and later returns to the United States government in payment of the tax, is part of its "gross receipts" for mercantile tax purposes, under the pertinent provisions of the Code of the City of Philadelphia.

The Department of Collection of the City of Philadelphia ruled that such sums should be included in the computation of Humble's "gross receipts" for mercantile tax purposes for the years 1960 through 1962. On appeal the Court of Common Pleas of Philadelphia County sustained the decision of the department and entered judgment accordingly. We granted certiorari under Rule 68½, and now reverse.

The Mercantile License Tax of Philadelphia's Code[3] is an excise tax on the privilege of doing business in that city, and is measured by the gross receipts of the business. See, *National Biscuit Company v. Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953). However, the Mercantile Tax Regulations[4] exclude from "gross re-

---

[1] Sales for certain specified uses are exempt from the tax. Also a refund to the purchaser is provided for if the gasoline is used on a farm for farm purposes.

[2] Section 48.4081-1(c) of the Treasury Regulations (26 C.F.R. §4081-1(c)).

[3] Section 19-1001 et seq.

[4] Section 303(a)(4).

ceipts," in ascertaining the tax base, "taxes collected as agent for the United States of America, Commonwealth of Pennsylvania, or City of Philadelphia, where the customer or ultimate consumer pays the tax."

The City of Philadelphia admits, as it must, that if Humble is a mere collector of the tax involved, such sums must be excluded in the computation of its taxable gross receipts. However, it argues earnestly and ably that under the code, supra, the tax is imposed solely on the producer, not the purchaser, and Humble cannot be deemed to be a collector of taxes imposed upon itself.

We agree that if the tax involved is truly a manufacturer's or producer's tax, the city's position is correct. We further agree that the mere fact the tax is passed on to the purchaser does not determine upon whom the tax is imposed. The economic burden of all taxes incident to the sale of merchandise is traditionally so passed on as part of the "overhead." In the same category is the circumstance of the purchaser receiving an invoice, separately listing the tax involved. Invoices or bookkeeping cannot change the nature or incidence of the tax. However, it is our considered conclusion that the operative word in §4081 of the Internal Revenue Code, supra, is "sold," and the particular levy is a sales tax pure and simple. Further, the nature, the size of the tax in relation to the wholesale price of the product,[5] and the purpose thereof compel the conclusion, that it is not and never was intended to be imposed upon the producer, but rather upon the purchaser, the user and prime beneficiary of the facilities that the tax pays for and makes possible. The producer's responsibility is limited to seeing that it is paid; hence realistically and logically it is nothing more than a collector thereof.

---

[5] The federal tax is equal to 26% of the wholesale price.

The revenue collected as a result of the tax does not go into the general treasury. Instead, it is placed in a special fund and is used solely to defray the cost of the federal highway system. It was designed to charge the motorists, who use the highways, with the cost thereof. It has been recognized and characterized by both the President and Congress of the United States as a "user tax."[6] Moreover, this conclusion is fortified by §6420(a) of the code itself, which provides for a refund *to the purchaser* if the gasoline is used on a farm for farm purposes.

Our ruling is supported by analogous federal court decisions. See, *Panhandle Oil Co. v. Mississippi ex rel. Knox*, 277 U.S. 218 (1928); *Indian Motorcycle Co. v. United States*, 283 U.S. 570 (1931). See also, *Standard Oil Co. v. Mich.*, 283 Mich. 85, 276 N.W. 908 (1937); *Standard Oil Co. of Indiana v. State Tax Commissioner of North Dakota*, 71 N.D. 146, 299 N.W. 447 (1941); and, *Esso Standard Oil Co. v. City of Danville*, 45 C.L.O. 358 (Corp. Court of Danville, Va., 1950). It is also in line with a multitude of our own decisions: "It is fundamental that taxing statutes and ordinances must be strictly construed and if there is any reasonable doubt as to the meaning intended, the doubt must be resolved in favor of the taxpayer and against the taxing authority: [citing cases]." *Don Allen Chevrolet Co. v. Pittsburgh*, 414 Pa. 429, 433, 200 A. 2d 388 (1964). See also, *Tax Review Board v. Green*, 409 Pa. 448, 187 A. 2d 572 (1963).

Judgment reversed.

---

6 See, President's Message to Congress, May 17, 1965. Also the report of the House Ways and Means Committee on H.B. 8371, 89th Congress, First Session (1965) at 1070-71.